IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>RAMIRO ESQUIVEL,<br><br>      Defendant. | AMENDED ORDER AND<br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:06 CR 231 |

  Defendant Ramiro Esquivel seeks to suppress evidence obtained during the execution of a search warrant. Mr. Esquivel claims that the affidavit submitted in support of the search warrant omitted material information, the presence of which would have altered the magistrate's conclusion that the warrant was supported by probable cause. Mr. Esquivel requests an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), at which the sufficiency of the affidavit can be examined more thoroughly. No hearing is necessary, however, because even if the omitted information identified by Mr. Esquivel had been included in the affidavit, probable cause would still justify the issuance of the warrant.[1]

---

[1] On September 7, 2006, the court issued an Order and Memorandum Decision denying Mr. Esquivel's request for a Franks hearing and declined to suppress the evidence obtained as a result of the search. A short time later, counsel informed the court that the affidavit incorrectly indicated that police officers had received three complaints implicating the residence ultimately searched. In actuality, police officers only received two complaints. The present Amended Order and Memorandum Decision reevaluates the sufficiency of the affidavit without reference to the complaint about the residence that was erroneously included in the affidavit.

## Background

After reviewing an affidavit submitted by Detective Randy S. Chandler, a Utah state court judge issued a warrant authorizing the search of a residence in Magna, Utah. In his affidavit, Detective Chandler first outlined his training and experience in matters relating to drug investigation and interdiction before turning to the facts that he claimed justified a search of the Magna residence.

Detective Chandler represented in his affidavit that, about two months earlier, police had been contacted by an anonymous informant claiming that there was short-term traffic at the Magna home. According to the informant, individuals at the residence were passing out baggies containing an unknown substance. The affidavit indicates that police received another anonymous complaint, in which the caller made an identical allegation. A little over a month later, police received yet another anonymous call. The caller told police that he had a son that was buying drugs from the Magna residence from an individual named Benji. The caller stated that Benji carried large amounts of cash on his person.

In addition to information related to the anonymous calls, Detective Chandler, in his affidavit, detailed the results of an interview conducted by the Utah Division of Child and Family Services with a seven-year-old boy who was living in the Magna residence. The child told the interviewer that a man named "Candy" was living in the home. The child stated that he had watched Candy cut white powder on a table in the home and then place the powder into bags. During the interview, the child indicated that he had witnessed Candy using a scale when cutting the white powder. The child also informed the interviewer that he had seen two pipes in the home. One of the pipes was described as a colorful glass pipe about one foot tall. The child described the other pipe as smaller, and containing a white and brown substance.

Based on the facts outlined in the affidavit, the reviewing state court judge determined that probable cause supported the issuance of a search warrant. But Mr. Esquivel maintains that Detective Chandler omitted material information from his affidavit. Specifically, Mr. Esquivel argues that Detective Chandler had already followed up on the anonymous phone calls and had not uncovered any information supporting further police action. Additionally, Mr. Esquivel only recently learned that officers received just one complaint regarding short-term traffic and the passing of baggies, not two complaints as indicated in the affidavit. The government concedes that officers received only one complaint involving allegations of short-term traffic and the passing of baggies. The government has represented to the court that a clerical error led to the inclusion of language in the affidavit indicating that officers received two such complaints.

Mr. Esquivel, in support of his contention that Detective Chandler omitted material information from his affidavit, attaches two police reports that detail Detective Chandler's investigation of the two anonymous phone calls officers received. According to the first report, Detective Chandler visited the Magna residence after receiving the complaint about short-term traffic and the passing of baggies at the residence. Once there, he spoke with Maria Lopez and Mr. Esquivel who lived at the residence. While speaking with them, he observed children passing baggies filled with chips and candy. After speaking with Ms. Lopez and Mr. Esquivel for a short time, Detective Chandler left the residence without taking any further action.

Detective Chandler's second police report, concerning the allegations involving Benji, indicates that he contacted Ms. Lopez, Benji's mother, at the Magna residence. Ms. Lopez told Detective Chandler that she was separated from her husband and that her husband had previously made allegations implicating Benji in drug activity in an effort to antagonize her. Detective Chandler spoke to Benji when he later returned home. Benji denied selling drugs and echoed

3

Ms. Lopez's sentiment that her estranged husband had previously made similar allegations. The record also indicates that before Detective Chandler submitted his affidavit, he was aware that a search of Benji's locker at school had not turned up any evidence of drug-related activity.

Finally, Mr. Esquivel states that Detective Chandler was aware that the seven-year-old child interviewed by DCFS had a history of pitting his parents, Ms. Lopez and her estranged husband, against one another. Detective Chandler did not include any information about his follow-up investigation into these matters, confining his affidavit to the tips and allegations the police had received that indicated that drug-related activity was occurring at the Magna home.

## Analysis

There is a presumption of validity that attaches to affidavits supporting a search warrant. United States v. Barrera, 843 F.2d 1576, 1579 (10th Cir 1988). To challenge the probable cause finding made by a judge in support of a search warrant by claiming that there were false statements in the affidavit supporting the warrant, a defendant must make a substantial preliminary showing that: (1) the affidavit contains intentional or reckless false statements; and (2) if purged of its falsities, the affidavit would not be sufficient to support a finding of probable cause. United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing Franks, 438 U.S. at155-56). The standard announced in Franks, "likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause." United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001) (citations omitted).

Omitted information is only "material" if it is "so probative as to negate probable cause" when revealed at the suppression hearing. Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990) (citation omitted). In order to determine if an affidavit sufficiently establishes probable cause regardless of omissions or inaccuracies, the reviewing court should "delete false or

4

misleading statements and insert the omitted truths." Id. at 582 n.13. If the inclusion of the omitted information "would not have altered the . . . judge's decision to authorize the search, then the fruits of the challenged search need not be suppressed." United States v. Avery, 295 F.3d 1158, 1167 (10th Cir. 2002) (citations omitted). While a preliminary showing that an affidavit contains material omissions may entitle a defendant to an evidentiary hearing, there is no need for an evidentiary hearing here because all of the omissions and inaccuracies at issue are known. To mandate an evidentiary hearing, the challenger's attack "must be more than conclusory and must be supported by more than a mere desire to cross-examine." United States v. Ross, 920 F.2d 1530, 1533 (10th Cir.1990), (citing Franks at154).

     Mr. Esquivel claims that Detective Chandler omitted material information from his affidavit by failing to inform the state court judge that he had followed up on the anonymous tips received by the police and detailed in his affidavit. In essence, Mr. Esquivel claims that had Detective Chandler accurately indicated that police received only two complaints and included information regarding his follow-up investigation of those complaints in his affidavit, the state court judge could not have concluded that probable cause existed. Accordingly, the question presented by Mr. Esquivel's motion to suppress is whether Detective Chandler's affidavit establishes probable cause justifying a search of the Magna residence if that affidavit is stripped of its contention that police received three instead of two complaints and is augmented with the omitted information identified by Mr. Esquivel.

     "In determining whether an affidavit contains sufficient information to support a finding of probable cause for the issuance of a search warrant, . . . the issuing judge or magistrate[] must consider the totality of the circumstances and determine whether the affidavit established the probability that evidence of criminal activity would be located in the desired search area." United

States v. Wittgenstein, 163 F.3d 1164, 1172 (10th Cir. 1998).

The affidavit in this case, even when the information concerning a third complaint is omitted and when the omissions identified by Mr. Esquivel are included, meets the probable cause standard. Detective Chandler received an anonymous tip about short-term traffic at the Magna residence that also indicated that baggies were being distributed at the home. Later, he received another tip directly alleging that a resident of the Magna home was dealing drugs. Finally, Detective Chandler learned from a resident of the home, although admittedly a young child, that significant drug activity was occurring within the residence.

It is true that Detective Chandler's follow-up investigation did not reveal any further evidence of drug-related activity. It is also true that Detective Chandler uncovered innocent conduct that may have explained some of the suspicious behavior complained of in the anonymous phone calls. Detective Chandler additionally learned that Ms. Lopez's estranged husband was apparently motivated to cause her strife. But these facts do not change the reality that the Magna residence was repeatedly being implicated in drug-related activity. In fact, as time went on, the information Detective Chandler received in this regard grew more and more specific.

The possibility that facts submitted in support of search warrant affidavit might be explained by innocent activity does not preclude a finding of probable cause. See United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (even though an innocent explanation might be consistent with facts alleged in a search warrant affidavit, those facts may still support a probable cause determination); see also United States v. Martinson, 811 F. Supp. 1097, 1105 (E.D. Pa. 1993) ("To provide probable cause . . . a complaint for a search warrant 'need only allege specific facts establishing a reasonable probability that the items sought are likely to be at the

locations designated; the [complaint] need not also negate every argument that can be asserted against that probability.'" (quoting United States v. Rambis, 686 F.2d 620, 623 (7th Cir. 1982)); United States v. Badalmenti, No. S.S. 84 Cr. 236 (PNL), 1985 WL 2572, at *5 (S.D.N.Y. Sept. 19, 1985) ("The attesting agents' belief that these actions were part of a pattern of concealed narcotics dealing and money laundering, was reasonable, even if it should turn out as to any or all the defendants that an innocent explanation was the correct one.").

Further, although Detective Chandler was aware that Ms. Lopez's estranged husband may have been motivated to make allegations that would cause her trouble, Detective Chandler did not know if any of the tips actually originated from Ms. Lopez's husband. Considering this information a material omission would preclude law enforcement's reliance on anonymous tips in situations where investigators are aware that there is an individual or individuals that bear ill-will toward the suspect.

Finally, although a substantial portion of the information contained in the affidavit was obtained from a seven-year-old boy, the age of the informant does not necessarily preclude reliance on his statements. See Easton v. City of Boulder, 776 F.2d 1441, 1450 (10th Cir. 1985) ("[E]ven if [the children's testimony] was inadmissible in court, perhaps because of an inability to understand the oath, or for whatever reason, their statements could nonetheless be used as a basis for a probable cause determination to support the issuance of a warrant."). Here, the child provided dramatically detailed testimony about the presence of drugs in the residence. While Detective Chandler was presumably aware that the child had a history of pitting his parents against one another, that fact does not reduce the probative value of the child's statements to such an extent that those statements cannot be relied upon to make a probable cause determination.

Without a doubt, Detective Chandler was aware of relevant information pertaining to the Magna residence that he did not include in his affidavit. But while the facts that Detective Chandler omitted may have been relevant to the state court judge's probable cause analysis, those facts were not material to that analysis. Additionally, it is true that the affidavit indicated that officers had received three anonymous complaints instead of two. But the anonymous call that was mistakenly included in the affidavit did not add any significant factual details that could be viewed as a determinative consideration in the state judge's probable cause analysis. The search warrant in this case was supported by repeated tips connecting the Magna residence to drug use and trafficking. Further, Detective Chandler received information from an actual resident of the home who observed facts consistent with drug use and distribution. In short, the affidavit contained sufficient facts to establish the probability that contraband would be found within the Magna residence.

## Conclusion

The affidavit submitted by Detective Chandler in support of his request for a search warrant established probable cause to search the Magna residence. Even when the court considers that officers received only two anonymous complaints instead of the three identified in the affidavit and considers the omitted material identified by Mr. Esquivel, the core facts still justify the state court judge's decision to issue a search warrant covering the residence. Therefore, Mr. Esquivel's Motion to Suppress (dkt. #12) is DENIED. Also, because this Amended Order and Memorandum Decision considers the affidavit's improper indication that officers received three anonymous calls instead of two, Mr. Esquivel's Motion for Reconsideration (dkt. #23) is DENIED as moot.

DATED this 29th day of September, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge